```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/23/2026
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
LUCINO DUQUE MENDOZA,                                            :
                                                                 :
                              Petitioner,                        :
                                                                 :       26-cv-1260 (LJL)
               -v-                                               :
                                                                 :       MEMORANDUM AND
KRISTI NOEM, et al.,                                             :       ORDER
                                                                 :
                              Respondents.                       :
                                                                 :
-----------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

   Petitioner Lucino Duque Mendoza ("Petitioner") brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his immigration detention. Dkt. No. 1 (the "Petition" or "Pet."). He has spent the last approximately nine-and-a-half months detained in the Orange County Correctional Facility in conditions resembling criminal confinement. He seeks immediate release or a renewed bond hearing before an immigration judge where the Government bears the burden of proving by clear and convincing evidence that he is either a flight risk or a danger to the community. For the following reasons, the petition is granted.

## BACKGROUND

   Petitioner is a thirty-seven-year-old father of four United States-citizen children. Pet. ¶ 7. He has been married to a United States citizen for over ten years. *Id.* ¶ 1. He last entered the country in April 2006 and has lived here for nearly twenty years. *Id.* ¶ 7. He has a consistent employment record. *Id.* ¶ 37. Before his detention, he was the primary financial provider in his household and an active caregiver. *Id.* ¶ 50. He has worked long hours, prepared his children for school in the mornings, and spent his weekends attending church and taking his children on activities and outings. *Id.*

Petitioner has never been convicted of a criminal offense in the United States. *Id.* ¶ 54. Over fifteen years ago, he pleaded guilty to a traffic infraction for "[d]riving while ability impaired" under N.Y. Veh. & Traf. L. § 1192(1). *Id.*[1] That infraction resulted in a fine, no incarceration, and no allegation of harm to person or property. *Id.* He has acquired other traffic infractions over the years, all resulting in either administrative dispositions or fines and no criminal convictions, jail time, or allegations of harm to property or others. *Id.* ¶ 55.

Petitioner has one currently pending criminal matter stemming from a September 9, 2024, arrest. Dkt. No. 1-1 at 59.[2] He was initially charged with aggravated driving while intoxicated with children present, harassment in the second degree, criminal obstruction of breathing, and assault in the third degree under N.Y. Veh. & Traf. L. §§ 1192(2-a(b)) and 1192(3) and N.Y. Penal L. §§ 240.26(1), 121.11(a), and 120.00(1). Dkt. No. 1-3 at 4. Those charges have since been dropped or reduced to a top-count misdemeanor of driving while intoxicated under N.Y. Veh. & Traf. L. § 1192(3), attempted assault in the third degree under N.Y. Penal L. § 110/120.00,[3] and harassment under N.Y. Penal L. § 240.26. Pet. ¶ 56. Petitioner was released the day after his arrest—the State apparently did not seek pre-trial detention—and remained at liberty for the next six months. There is no evidence of any arrests or interactions with law enforcement during those six months.

Petitioner's liberty came to an end when, on May 7, 2025, eight to ten officers of the United States Immigration and Customs Enforcement ("ICE") arrested him outside his home. *Id.*

---

[1] "A traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment and shall not affect or impair the credibility as a witness or otherwise of any person convicted thereof." N.Y. Veh. & Traf. L. § 155.
[2] Citations to this docket entry refer to the pagination listed at the bottom-right corner of the document.
[3] The Petition cites the relevant statute as N.Y. Penal L. § 110/10.00(1), but those provisions simply define "attempt[s] to commit a crime" and "offense."

¶¶ 34, 35.  Petitioner contends that he and his wife asked to see a warrant at the time but were refused.  *Id.* ¶ 35.  The Government has produced a Form I-200 Warrant for Arrest for Petitioner during this litigation.  Dkt. No. 12-1.  The warrant is dated April 15, 2025, and lists a date of service of May 7, 2025 (the day of Petitioner's arrest).  *Id.*  It states that probable cause exists to believe Petitioner is removable from the United States based on (1) the execution of a charging document to initiate removal proceedings against him and (2) biometric confirmation of Petitioner's identity and a records check of federal databases.  *Id.*  The preamble to the warrant states that it is issued under the authority of Sections 236 and 287 of the Immigration and Nationality Act ("INA").  *Id.*  The Government has also produced a Form I-213 during this litigation dated May 7, 2025, which indicates a disposition of "Warrant of Arrest/Notice to Appear."  Dkt. No. 9-4 at 1.  The form states that Petitioner was administratively charged on May 6, 2025 with being an "alien present without admission or parole" under Section 212(a)(6)(A)(i) of the INA.  *Id.* at 2.  The form further indicates that on April 14, 2025, ICE received a tip from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") regarding Petitioner's alleged handling of commercial fireworks while employed by J&J Computing Fireworks Extravaganza.  *Id.*  Also in the record is a Form I-286 "Notice of Custody Determination" dated May 7, 2025, which indicates that Petitioner was detained under Section 236 of the INA.  Dkt. No. 9-5.

Shortly after Petitioner's arrest, ICE transferred him to the Orange County Correctional Facility ("OCCF"), where he has remained ever since.  Pet. ¶ 34.  At OCCF, Petitioner reports that he has remained in restrictive, jail-like conditions with limited ability to communicate reliably with counsel or family.  *Id.* ¶ 49; *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850–51 (2d Cir. 2020) (noting that noncitizens detained at OCCF are "incarcerated under conditions

3

indistinguishable from those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes"). He also notes that he has suffered a rapid deterioration in his physical and emotional wellbeing. Pet. ¶ 49. His family, meanwhile, has fallen behind on utilities, car and phone payments, and rent given that Petitioner previously paid for nearly all essential household expenses. *Id.* ¶ 51. The family has been served with an eviction notice. Dkt. No. 1-4.

 While detained, Petitioner filed a Form EOIR-42B, Application for Cancellation of Removal for Non-Permanent Residents. Pet. ¶ 37. An immigration judge ("IJ") denied that application, and Petitioner has since appealed to the Board of Immigration Appeals ("BIA"). *Id.* ¶ 7. That appeal is currently pending. *Id.* ¶¶ 7, 43. Also while detained, Petitioner sought a bond hearing for release pending the resolution of his immigration proceedings. *Id.* ¶ 38. He received that hearing before an IJ on July 15, 2025. *Id.* The IJ found that Petitioner was not eligible for bond because he entered the United States without inspection and therefore was subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2). Dkt. Nos. 1-2, 1-3. The IJ also found, hypothetically, that if Section 1225 did not apply, Petitioner bore the burden of proving that he was not a danger to the community, and Petitioner had failed to carry that burden. Dkt. No. 1-3 at 3–6. The IJ did not determine whether Petitioner presented a risk of flight. *Id.* at 6. Because bond was denied, and because "detention lasts through the initial removal determination proceedings (which themselves can take months or years) and all inter-agency and federal court appeals, even where an individual has prevailed and the Government appeals," *Velasco Lopez*, 978 F.3d at 852, there is "no end in sight to Petitioner's detention," *O.F.C. v. Almodovar*, 2026 WL 74262, at *4 (S.D.N.Y. Jan. 9, 2026).

4

## PROCEDURAL HISTORY

Petitioner initiated this case on February 13, 2026 challenging his continued detention as violating due process and seeking either immediate release or a new bond hearing with shifted burdens and additional procedural protections.  Dkt. No. 1.  Later that same day, the Court ordered the Government to respond with certain information, including the asserted statutory basis for Petitioner's detention and the extent to which this case is distinguishable from the Court's prior opinions in *Tumba v. Francis*, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025), and *O.F.C. v. Almodovar*, 2026 WL 74262 (S.D.N.Y. Jan. 9, 2026).  The Court also ordered the Government to produce Petitioner for a hearing on February 20, 2026.  Dkt. No. 8.  On February 18, 2026, the Government filed a letter indicating that Petitioner is currently detained under 8 U.S.C. § 1225(b)(2) and that his case is not materially distinguishable from *Tumba* and *O.F.C.* Dkt. No. 9.  Petitioner filed a reply letter the next day.  Dkt. No. 10.

The Court held a hearing on February 20, 2026.  Notwithstanding the Court's order directing the Government to produce Petitioner for that hearing, the Government did not do so. Dkt. No. 13 ¶ 4.  The Government states that although ICE was informed two days before the hearing that Petitioner needed to be produced, that directive "was not executed" due to an "inadvertent but serious mistake" in failing to communicate the Court's instruction to the individuals responsible for transportation.  *Id.* ¶¶ 5–8.  After learning that Petitioner would not be produced, Petitioner's counsel indicated that although Petitioner very much wished to be there, the hearing could proceed in the interest of resolving the case as promptly as possible.  The Court therefore went forward with the hearing.  Toward the hearing's conclusion, the Court directed the Government to submit the I-200 Arrest Warrant for Petitioner, and the Government indicated that it could do so by 5:30 PM later that same day.  The Court ordered the Government to do so. The Government failed to meet that deadline or to file a letter explaining why it could not

comply with the Court's order. The Court therefore directed the Government to show cause why an adverse inference regarding the existence of the warrant should not be drawn against it. Dkt. No. 11. The Government subsequently filed a letter with the warrant, Dkt. No. 12, and Petitioner filed another reply, Dkt. No. 14.

## LEGAL STANDARD

Petitioner proceeds under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention." *Lopez v. Sessions*, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). A petitioner bears the burden of establishing his allegations by a preponderance of the evidence. *Gotti v. United States*, 622 F. Supp. 2d 87, 91 (S.D.N.Y. 2009) (citing *Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997)).

## DISCUSSION

As the parties appear to agree, the Court's analysis in this case is guided principally by its prior two opinions in *Tumba* and *O.F.C.*, which addressed similar circumstances. First, in *Tumba*, this Court held that noncitizens such as Petitioner who have entered the country without inspection are detained under 8 U.S.C. § 1226(a), under which detention is discretionary, rather than under Section 1225(b)(2), which imposes mandatory detention. 2025 WL 3079014, at *2–6. Second, in *O.F.C.*, the Court held that a noncitizen subject to Section 1226(a) whose bond was discretionarily revoked by DHS was entitled under the Fifth Amendment to a prompt post-arrest bond hearing before an IJ at which the Government bore the burden of proving by clear and convincing evidence that the individual presented a risk of flight or a danger to the

community.  2026 WL 74262, at *16.  The petitioner in *O.F.C.* had been convicted of driving under the influence while on immigration bond and, at a post-detention bond hearing, an IJ had found that the petitioner could not bear the burden of proving his lack of dangerousness.  *Id.* at *3.  This Court held that despite BIA precedents to the contrary, the burden at the bond hearing should have been placed on the Government and that furthermore, in assessing dangerousness, the IJ should have considered alternatives to detention and the petitioner's ability to pay a bond.  *Id.* at *16.  The Court accordingly ordered that O.F.C. be released unless the Government promptly conducted a new, constitutionally adequate bond hearing.  *Id.*  The Court further explained that to prevent the relief in its order from becoming illusory, the Government was enjoined from (1) exercising an automatic stay if the IJ determined that release on bond was appropriate; and (2) invoking 8 U.S.C. § 1225(b)(2) as a basis for Petitioner's detention before the IJ or as grounds for an appeal to the BIA.  *Id.*[4]

The Government contends that if the Court adheres to its prior decisions in *Tumba* and *O.F.C.*, the appropriate remedy in this case is a new bond hearing before an IJ.  Dkt. No. 9 at 3.  Petitioner argues that his case is unlike *O.F.C.* insofar as ICE arrested him without any valid exercise of discretion (i.e., an individualized determination of risk of flight or dangerousness) and that the appropriate remedy is therefore immediate release rather than a new bond hearing.  Dkt. Nos. 10, 14.[5]  As the Court explained in *O.F.C.*, pinpointing when exactly the due-process

---

[4] A hearing in line with these procedures took place shortly thereafter, and the petitioner was released on bond.  *See* No. 25-cv-9816, Dkt. No. 22 (S.D.N.Y. Jan. 14, 2026).

[5] In his February 19, 2026 reply letter, Petitioner also suggested that his case was distinguishable from *O.F.C.* because he has not been convicted of a crime while released on immigration bond.  Dkt. No. 10 at 4–5.  At oral argument, Petitioner's counsel clarified that the issue in this case is whether ICE validly exercised its discretion to detain Petitioner in the first instance, not whether Petitioner was entitled to more process than the individual in *O.F.C.*  The Court therefore does not address whether Petitioner was entitled to additional process in the form of, for example, a pre-detention bond hearing.

7

violation occurred matters, for if the violation "occurred after Petitioner's []detention—e.g., when his bond hearings were conducted in an untimely manner or without proper procedural protections—that violation might be cured by something other than release, such as by ordering a constitutionally appropriate bond hearing." 2026 WL 74262, at *6. If, however, Petitioner was detained without an individualized determination regarding risk of flight or danger to the community, his detention might have "been unlawful from its inception," and the appropriate remedy might be release. *Id.* at *13.

The issue for present purposes, then, is whether ICE exercised its discretion by making an individualized determination regarding the need to detain Petitioner prior to his detention. As in *O.F.C.*, Petitioner has failed to carry his burden of demonstrating that ICE exercised no discretion prior to detaining him. The documentary evidence reflects that Petitioner was detained under Section 1226(a). The Form I-200 Warrant for Arrest mentions Section 236 of the INA (codified at 8 U.S.C. § 1226). Dkt. No. 12-1. The Form I-286 also indicates that Petitioner was detained under Section 236 of the INA. Dkt. No. 9-5. Thus, as in *O.F.C.*, "this is not a situation in which the Government, at the initial point of []arrest, was operating under the assumption that Petitioner was subject to mandatory detention under the operative statute. Rather, it would have believed that his []detention required an exercise of discretion." 2026 WL 74262, at *13. Petitioner contends that Section 1226 contains mandatory detention provisions for certain noncitizens deportable based on their criminal records, but he also concedes that the mandatory-detention provision in Section 1226, subsection 1226(c), is not applicable to him, *see* Dkt. No. 14 at 1, and the Government has never asserted that it is. The circumstantial evidence is also consistent with the notion of an individualized determination. ICE did not arrest Petitioner "at a routine immigration check-in at 26 Federal Plaza," but rather by seeking him out

at his home after receiving a tip from ATF.  Dkt. No. 9-4; *O.F.C.*, 2026 WL 74262, at *14.  The evidence thus suggests that "ICE specifically sought him out" and targeted him based on some individualized basis.  *See O.F.C.*, 2026 WL 74262, at *14.

Petitioner contends that ICE's policy of mandatorily detaining everyone in removal proceedings preceded his detention, and he cites a report from the American Immigration Council for the proposition that within weeks of President Trump's inauguration, ICE "stopped issuing discretionary releases, requiring immigrants held in detention centers to petition immigration judges for release on bond."  Dkt. No. 10 at 2 (quoting "Immigration Detention Expansion in Trump's Second Term," American Immigration Council, Jan. 16, 2026, https://www.americanimmigrationcouncil.org/report/immigration-detention/).  But the fact that DHS stopped issuing discretionary releases does not mean that, contrary to the statute and regulations under which it was operating, it stopped exercising all discretion in making *initial* detention decisions.  Because Petitioner has not established that ICE detained him without making an individualized determination, but he has established that his bond hearing violated his due process rights, he is entitled to a new bond hearing with the burden placed on the Government as the party seeking to continue to deprive Petitioner of his liberty.

The Government has not offered any reason why the Court should not direct that the hearing be held in line with the procedures ordered in *O.F.C.*  The Government has also represented that, if the Court orders the Government and the IJ to follow those procedures, they would do so.  The following procedures apply for the reasons stated in *O.F.C.*:

(1) The Government bears the burden of establishing by clear and convincing evidence that Petitioner is either a flight risk or a danger to the community.

(2) In considering dangerousness and/or risk of flight and in setting any bond amount, the IJ must meaningfully consider alternatives to detention and Petitioner's ability to pay.

9

(3) The Government shall not exercise an automatic stay if the IJ determines that release on bond is appropriate.

(4) The Government and the IJ shall not rely on Section 1225(b)(2) as a basis for Petitioner's detention. "The purpose of the bond hearing is to see if the Government can establish by clear and convincing evidence . . . that Petitioner presents a danger to the community or a risk of flight, not to see if Petitioner can be detained on some other basis." *O.F.C.*, 2026 WL 74262, at *15.

Petitioner raises one additional issue: He asserts that the IJ "must not give undue weight to unsubstantiated criminal allegations in preliminary charging documents in making a custody redetermination." Pet. ¶ 94. Petitioner asserts that a finding of dangerousness based primarily on domestic allegations without a sworn victim statement, certified police report, or medical evidence of injury would potentially raise due process concerns, especially given that his criminal case has not proceeded to trial, no plea has been entered, and no conviction has resulted. *Id.* ¶ 57. He adds that he has been unable to resolve his criminal case precisely because he has been detained for approximately ten months. *See Velasco Lopez*, 978 F.3d at 847 (noting that a noncitizen was unable to resolve his criminal charges while detained under Section 1226(a), and that when he was finally produced, the charges were dismissed). Petitioner does not appear to contend that the IJ must be prohibited entirely from considering pre-conviction materials and documents. And the caselaw does not support such a brightline rule. The caselaw does, however, at least suggest that the appropriate weight to be placed on pre-conviction documents such as arrest reports and criminal complaints depends in part on how specific, detailed, and otherwise reliable the materials are. *See In re Guerra*, 24 I. & N. Dec. 37, 40–41 (BIA 2006). There is no categorical rule against hearsay in immigration court proceedings. *See Singh v. Barr*, 939 F.3d 457, 464 (2d Cir. 2019). But the evidence must be "probative" and its use "fundamentally fair." *Id.* (*Aslam v. Mukasey*, 537 F.3d 110, 114 (2d Cir. 2008) (per curiam)). Concerns regarding fairness in this context can be addressed, in part, by directing the IJ to permit

10

Petitioner to issue subpoenas for both friendly and hostile witnesses. The Government has indicated that the IJ has such authority. This would permit Petitioner to confront witnesses against him. And if a subpoenaed witness fails to appear for the hearing, that might bear on the reliability or value of the Government's evidence.

"With these protections in place, the Court is satisfied that the hearing can proceed before the IJ. The Court retains the jurisdiction to conduct a bail hearing itself or to release Petitioner if the Government's actions either render the Court's order illusory . . . or reflect bad faith or cause the Petitioner prejudice . . . . Furthermore, should Petitioner be released and subsequently redetained without being provided the procedural protections outlined in this Opinion, the Court expects that a prompt habeas petition will follow." *O.F.C.*, 2026 WL 74262, at *15.

## CONCLUSION

The Petition is conditionally GRANTED. Petitioner is hereby ordered released unless by March 6, 2026 the Government holds a bond hearing before an IJ at which the Government bears the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk. In considering dangerousness and/or risk of flight and in setting any bond amount, the IJ must meaningfully consider alternatives to detention and Petitioner's ability to pay a bond. Petitioner shall also be entitled to issue subpoenas prior to the hearing and to confront and cross-examine adverse witnesses at the hearing.

To avoid the relief in this Order becoming illusory, the Government is enjoined from exercising an automatic stay should the IJ determine that release on bond is appropriate. The IJ may not consider or invoke 8 U.S.C. § 1225(b)(2) as a basis for Petitioner's detention, nor may the Government rely on the statute as grounds for an appeal to the BIA.

The Court retains jurisdiction over this matter to ensure compliance with its Order and, should it determine that its Order has not been complied with, also retains jurisdiction to grant

11

Petitioner the full relief he has sought (i.e., release).  The Government is ordered to provide this Memorandum and Order to the IJ in advance of any hearing and to provide the Court with a transcript of any such hearing within one week.

    SO ORDERED.

Dated: February 23, 2026  
      New York, New York

                                      LEWIS J. LIMAN  
                                United States District Judge