UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
LUCINO DUQUE MENDOZA,                                              :
                                                                   :
                                    Petitioner,                    :
                                                                   :          26-cv-1260 (LJL)
            -v-                                                     :
                                                                   :         OPINION AND ORDER
KRISTI NOEM, et al.,                                              :
                                                                   :
                                    Respondents.                   :
                                                                   :
-------------------------------------------------------------------X

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED:  5/26/2026           │
└─────────────────────────────────┘
```

LEWIS J. LIMAN, United States District Judge:

Petitioner Lucino Duque Mendoza ("Petitioner") moves to enforce the Court's order of February 23, 2026 (the "Order") conditionally granting his petition for the writ of habeas corpus. Dkt. No. 21. The Court orally granted the motion to enforce during a hearing on May 20, 2026. Dkt. No. 26. This Opinion and Order explains that decision.

## BACKGROUND

The Court has previously detailed the background of this case. *See Mendoza v. Noem*, 2026 WL 494479, at *1–3 (S.D.N.Y. Feb. 23, 2026). Familiarity with the prior proceedings is presumed.

Petitioner is a thirty-seven-year-old father of four United States-citizen children. Dkt. No. 1 ("Petition" or "Pet.") ¶¶ 1, 7. He has been married to a United States citizen for over ten years and has resided in the country for nearly twice as long. *Id.* On May 7, 2025, officers of the United States Immigration and Customs Enforcement ("ICE") arrested him outside his home. *Id.* ¶¶ 34–35. He has been detained ever since—over a year at this point—in restrictive, jail-like conditions at the Orange County Correctional Facility ("OCCF"). *Id.* ¶¶ 2–3, 49; *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850–51 (2d Cir. 2020) (noting that noncitizens detained

at OCCF are "incarcerated under conditions indistinguishable from those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes").

Petitioner has never been convicted of a criminal offense in the United States. *Id.* ¶ 54. His May 2025 arrest by ICE followed his criminal arrest approximately eight months earlier for aggravated driving while intoxicated with children present, harassment in the second degree, criminal obstruction of breathing, and assault in the third degree. Dkt. No. 1-3 at 4. Those charges were subsequently reduced to a top-count misdemeanor of driving while intoxicated, attempted assault in the third degree, and harassment. Pet. ¶ 56. As of at least February 2026, the charges remain pending. *Id.* He was released the day after his criminal arrest and remained at liberty, apparently without incident, for eight months until ICE arrested him in May 2025.

Approximately two months into his detention at OCCF, Petitioner sought and received a bond hearing for release pending the resolution of his immigration proceedings. *Id.* ¶ 38. The immigration judge ("IJ") assigned to his case determined that Petitioner entered the United States without inspection and therefore was subject to mandatory detention.[1] Dkt. Nos. 1-2, 1-3. The IJ also found that even if Petitioner were not subject to mandatory detention, he bore the burden of proving that he was not a danger to the community, and he had failed to carry that burden. Dkt. No. 1-3 at 4–6.

This case followed. On February 13, 2026, roughly nine months into his detention, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his continued detention as violating due process and seeking either immediate release or a new bond hearing with shifted burdens and added procedural protections. *See Mendoza*, 2026 WL 494479,

---

[1] The Second Circuit has since rejected that legal conclusion. *See Barbosa da Cunha v. Freden*, 2026 WL 1146044, at *1–2 (2d Cir. Apr. 28, 2026).

at *2.  Respondents opposed the Petition but conceded that if the Court adhered to its prior decisions in *Tumba v. Francis*, 2025 WL 3079014 (S.D.N.Y. Nov. 4, 2025), and *O.F.C. v. Almodovar*, 2026 WL 74262 (S.D.N.Y. Jan. 9, 2026), Petitioner should be afforded a new bond hearing before an IJ.  *See id.* at *3–4.

The Court held a hearing on the Petition on February 20, 2026.  *Id.* at *3. Notwithstanding the Court's order directing Respondents to produce Petitioner for that hearing, *see* Dkt. No. 8, they did not do so due to what they called an "inadvertent but serious mistake," Dkt. No. 13 ¶ 8.  Toward the hearing's conclusion, the Court ordered Respondents to submit the I-200 Arrest Warrant for Petitioner by 5:30 PM later that same day, which Respondents indicated they could and would do, but they failed to meet that deadline or to file a letter seeking an extension.  2026 WL 494479, at *3.  The Court then directed Respondents to show cause why an adverse inference regarding the existence of the warrant should not be drawn against them, Dkt. No. 11, and they subsequently filed a letter with the warrant, Dkt. No. 12.

The Court issued a memorandum and order conditionally granting the Petition on February 23, 2026.  The Court explained that under the reasoning of its decisions in *Tumba* and *O.F.C.*, Petitioner was entitled to a new bond hearing rather than immediate release because the gravamen of the constitutional due process violation "occurred after [his] detention—e.g., when his bond hearings were conducted in an untimely manner [and] without proper procedural protections"—rather than at the initial point of arrest.  2026 WL 494479, at *3 (citation omitted). The Court therefore ordered that Respondents either release Petitioner or provide him with a new bond hearing before an IJ consistent with the following procedures:

> (1) The Government bears the burden of establishing by clear and convincing evidence that Petitioner is either a flight risk or a danger to the community.

(2) In considering dangerousness and/or risk of flight and in setting any bond amount, the IJ must meaningfully consider alternatives to detention and Petitioner's ability to pay.

(3) The Government shall not exercise an automatic stay if the IJ determines that release on bond is appropriate.

(4) The Government and the IJ shall not rely on Section 1225(b)(2) as a basis for Petitioner's detention. "The purpose of the bond hearing is to see if the Government can establish by clear and convincing evidence . . . that Petitioner presents a danger to the community or a risk of flight, not to see if Petitioner can be detained on some other basis." *O.F.C.*, 2026 WL 74262, at *15.

*Id.* at *4. The Court noted Respondents' representation that they and the IJ would follow those procedures. *Id.* The Court further noted that it "retain[ed] jurisdiction over this matter to ensure compliance with its Order and, should it determine that its Order has not been complied with, also retains jurisdiction to grant Petitioner the full relief he has sought (i.e., release)." *Id.* at *5. Respondents offered no objection to these procedures and did not take an appeal from the Court's Order.

Respondents provided Petitioner with a new bond hearing on March 4, 2026. Dkt. No. 17. At the hearing, Petitioner contended that, consistent with the Court's Order, Respondents bore the burden of demonstrating by clear and convincing evidence "that no alternatives to detention would suffice to keep the community safe," and that Respondents had failed to do so for several reasons, including because Petitioner's wife promised to help guarantee that he would not drive; ICE would use an ankle monitor to supervise him; he would return to therapy with his wife and could provide proof of such enrollment; and he was at liberty for eight months after his criminal arrest before being arrested by ICE, during which there were no incidents either with law enforcement or otherwise suggesting that he was a danger to the community. Dkt. No. 20-1 at 22:13–23:4. Petitioner added that he was "open to whatever [] restrictions the Court may impose, and the Court is required to explicitly consider them." *Id.* at 23:4–6. In their own

4

presentation, Respondents made no mention of the need for the IJ to consider alternatives to detention, and they proposed none. *Id.* at 9:10–12:17, 26:6– 27:6. Respondents instead focused primarily on Petitioner's September 2024 arrest, his prior traffic violations, and the fact that he had "failed to provide any other mitigating factors that shows that he is not a danger to the community." *Id.* at 11:15–24.

The IJ denied bond, finding that Respondents carried their burden of establishing that Petitioner was a danger to the community largely for the reasons Respondents provided. *Id.* at 31:9–12. Although the IJ noted that Petitioner "has been detained for many months since [his September 2024] arrest," that there were "[n]o incidents indicating he's had any problem in the detention center," and that "he was outside of detention from when he was released from the DUI before he got picked up eight months without any incidents," *id.* at 33:23–34:4, the IJ also speculated that "[t]here may have been other incidents we don't know about," before ultimately concluding that "[t]hat's not the Court's concern here," *id.* at 34:5–8. In reaching a finding of dangerousness, the IJ—like Respondents—offered no explanation or analysis with respect to alternatives to detention. The IJ did not discuss alternatives to detention, including either those floated by Petitioner's counsel or any others for that matter. At the end of the IJ's oral decision, he simply stated: "Now, the Court notes that the district court did find any alternative form to detention would be appropriate [sic], but, again, the Court making its bond determination as to dangerousness did not find it would be appropriate. It would be fine for a flight risk, not to the dangerousness in this case." *Id.* at 35:12–17. Petitioner's counsel then indicated that she had been unable to hear the IJ's oral decision, and the IJ summarized: "I denied as to danger because I found the Department satisfied their burden of proof for danger. I found no flight risk. I believe reasonable bond in the amount of 3,000 and the Department of Homeland Security would

want to have an ankle bracelet.  I did not find an alternative for the danger, but, yes, as to the flight risk." *Id.* at 36:7–13.  The IJ again provided no explanation for his conclusion that he "did not find an alternative for the danger." *Id.*

That brings the Court to the present motion, in which Petitioner seeks to enforce the Court's Order provisionally granting the Petition.  Dkt. No. 21.  Petitioner argues that because Respondents failed to provide him with a constitutionally adequate bond hearing that complied with the Court's Order, he is entitled to immediate release.  *Id.* at 21-1 at 1.  In particular, Petitioner asserts that "the IJ failed to meaningfully consider alternatives to detention as to dangerousness, the IJ failed to hold DHS to their burden of proof of dangerousness by clear and convincing evidence, and the IJ failed to acknowledge the lack of specificity, detail, and reliability of the initial criminal charging documents used against [Petitioner]." *Id.*  Petitioner filed his motion to enforce compliance with the Court's Order on May 1, 2026.  Dkt. No. 21.  On May 11, 2026, the Court scheduled a hearing on the motion to occur on May 19, 2026, which was subsequently adjourned to May 20, 2026.  Dkt. Nos. 22–23.  Respondents filed no response in opposition to Petitioner's motion.

The Court held the hearing as scheduled on May 20, 2026, during which it heard argument from both Petitioner and Respondents.  At the conclusion of the hearing, the Court orally granted the motion and ordered Petitioner released on $3,000 bond.  Later that same day, the Court issued an order reflecting its decision and indicating that a further written decision would follow.  Dkt. No. 26.  This Opinion and Order is that written decision.

## DISCUSSION

### I.    The Court Retains Jurisdiction Over the Petition.

An order conditionally granting a petition for a writ of habeas corpus "represent[s] a district court's holding that a constitutional infirmity justifies petitioner's release" but

nonetheless "provides the [Government] with a window of time within which it might cure the constitutional error." *J.M.P. v. Arteta*, 807 F. Supp. 3d 265, 285 (S.D.N.Y. 2025) (quoting *Phifer v. Warden, U.S. Penitentiary, Terre Haute, Ind.*, 53 F.3d 859, 865 (7th Cir. 1995)).  "A district court retains jurisdiction to review compliance with a conditional grant of the writ of habeas corpus, 'that is, to determine whether the Government properly cured the identified constitutional error.'"  *Id.* (quoting *Fernandez Aguirre v. Barr*, 2019 WL 4511933, at *3 (S.D.N.Y. Sept. 18, 2019)).  This Court specifically indicated as much in its order conditionally granting the Petition on February 23, 2026.  *See* 2026 WL 494479, at *5 (noting that "[t]he Court retain[ed] the jurisdiction to conduct a bail hearing itself or to release Petitioner" if Respondents failed to comply with its order (citation omitted)); *see also id.* ("The Court retains jurisdiction over this matter to ensure compliance with its Order and, should it determine that its Order has not been complied with, also retains jurisdiction to grant Petitioner the full relief he has sought (i.e., release).").  Indeed, "conditional writs 'would be meaningless' if a habeas court could not determine compliance with them.'"  *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 235 (W.D.N.Y. 2019) (quoting *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013)).

Respondents correctly do not dispute that Section 1226(e) of Title 8 of the United States Code poses no bar to the exercise of jurisdiction in these circumstances.  That provision "precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (internal quotation marks omitted and alterations adopted) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)).  As multiple courts have recognized, motions such as the one now before the Court do not challenge discretionary judgments made by the Government but instead raise potential "constitutional infirmit[ies] in the procedures

7

followed at a bond hearing." *See Bogle v. DuBois*, 236 F. Supp. 3d 820, 822 (S.D.N.Y. 2017).

These motions ensure compliance with a court's prior orders and prevent those orders from

becoming illusory. *Cf. O.F.C.*, 2026 WL 74262, at \*15 (holding that the court retained

jurisdiction to release Petitioner if the Government's actions "render[ed] the Court's order

illusory"). Such claims fall outside Section 1226(e)'s jurisdictional limitations. *See Bogle*, 236

F. Supp. 3d at 822 (citing *Cepeda v. Shanahan*, 2016 WL 3144394, at \*2 (S.D.N.Y. Apr. 22,

2016)); *see also Fernandez Aguirre*, 2019 WL 4511933, at \*4 ("By its plain language, [Section

1226(e)] bars review only of an IJ's 'discretionary' determinations, such as an IJ's weighing of

different pieces of evidence; it does not apply to claims that the IJ failed to comply with

constitutionally-mandated procedures in reaching those determinations."); *cf. Jennings*, 583 U.S.

at 296 ("Because the extent of the Government's detention authority is not a matter of

'discretionary judgment,' . . . respondents' challenge to 'the statutory framework that permits

[their] detention without bail' [] falls outside of the scope § 1226(e)." (citation omitted)).

The Court will therefore proceed to consider Petitioner's motion to enforce.

## II.    Respondents Failed to Cure the Constitutional Violation.

At the outset, Respondents have effectively waived any opposition to Petitioner's motion

by failing to respond. Petitioner filed and served his motion on May 1, 2026. Dkt. No. 21. The

Local Rules for this District specify that "[o]n all civil motions, petitions, and applications, other

than those described in Rule 6.1(a), and other than petitions for writs of habeas corpus, . . . any

opposing or response papers must be served within 14 days after service of the moving papers."

L. Civ. R. 6.1(b). Petitioner's present motion is not a petition for a writ of habeas corpus but

rather a civil motion to enforce judgment. Respondents therefore had until May 15, 2026 to

respond. They did not do so. Nor did they seek an extension of the time to respond either before

or after the expiration of the deadline. At the hearing on May 20, 2026, counsel for Respondents

candidly admitted that Respondents' failure to respond was due to mere neglect.  Counsel did not seek an extension of time to respond and provided no reason why one should be granted.  The Court permitted Respondents to offer argument on the motion at the hearing, but it specifically indicated that such decision did not mean it was accepting those arguments as properly raised, and it noted that it withheld judgment with respect to that issue.

"Generally, when a party fails to address a legal argument in its opposition papers"—or fails to file opposition papers altogether—"such argument is deemed waived." *Telebrands Corp. v. BHSD Trading LLC*, 2025 WL 107070, at *5 (N.D.N.Y. Jan. 15, 2025); *see also Rosenblatt v. City of New York*, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) (Lynch, J.) (party "effectively concedes" arguments by failing to respond to them).  That principle applies no less to the Government.  *See Sajous v. Decker*, 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018) (Nathan, J.) ("In its opposition, the Government makes no argument regarding which party should bear the burden, or what standard of proof should govern, at a bond hearing.  As a result, the Government has 'waived this argument by failing to raise it in opposition to plaintiffs' motion.'" (quoting *NML Cap., Ltd. v. Republic of Argentina*, 2009 WL 1528535, at *1 (S.D.N.Y. May 29, 2009))).  By failing to respond, and by offering no real excuse for that failure, Respondents have effectively consented to the motion.  That conclusion is especially warranted given that the nature of the underlying constitutional violation here is unlawful delay; Respondents should not be permitted to further delay matters by failing to respond, only belatedly offering an oral opposition, and thereby depriving Petitioner of the opportunity to reply (lest he agree to spend additional time detained while the issues are further briefed).

In any event, Petitioner is entitled to release on the merits of his motion: The renewed bond hearing failed to comport with the Court's Order in at least one material respect, as the IJ did not meaningfully consider alternatives to detention.[2]

"In reviewing a motion to enforce, . . . the Court's task is narrow: it is to determine whether [the Government] complied with this Court's order, not to review the hearing evidence de novo." *G.F.F. v. Francis*, 2026 WL 924072, at *3 (S.D.N.Y. Apr. 4, 2026) (quoting *Arana v. Barr*, 2020 WL 2094098, at *7 (S.D.N.Y. May 1, 2020)). Although this inquiry is narrow, it is not toothless. "[F]ederal courts have a cardinal interest in ensuring strict compliance with their orders." *Bray v. City of New York*, 356 F. Supp. 2d 277, 287 (S.D.N.Y. 2004). Recognizing as much, numerous courts in this Circuit have ordered petitioners released where the record indicates that immigration judges presiding over new bond hearings have failed to comply with the court-ordered procedures for those hearings. *See, e.g.*, *G.F.F.*, 2026 WL 924072, at *3–4; *Fernandez Aguirre*, 2019 WL 4511933, at *3; *Hechavarria*, 358 F. Supp. 3d at 242–43; *Mathon v. Searls*, 623 F. Supp. 3d 203, 217 (W.D.N.Y. 2022); *Thomas v. Searls*, 2021 WL 358128, at *7 (W.D.N.Y. Jan. 4, 2021); *Quituizaca v. Barr*, 2021 WL 6797494, at *6–7 (W.D.N.Y. Jan. 5, 2021).

Judge Koeltl's recent decision in *G.F.F. v. Francis* is instructive. 2026 WL 924072, at *1. The petitioner in that case filed a motion to enforce the court's prior order requiring a new bond hearing, arguing that the IJ had failed to meaningfully consider alternatives to detention as required by the court's order. 2026 WL 924072, at *1. Judge Koeltl granted the motion, explaining that while the IJ appropriately found by clear and convincing evidence that the

---

[2] The Court need not address Petitioner's additional arguments regarding the IJ's reliance on criminal charging documents and his failure to otherwise hold Respondents to their burden.

petitioner presented a flight risk, the IJ "did not . . . meaningfully consider whether there were reasonable alternatives to detention that would reasonably ensure [the petitioner's] continued presence." *Id.* at *3. "That was error." *Id.* For example, although the IJ mentioned in passing the possibility of geolocation monitoring, the IJ rejected that condition "in cursory fashion" without explaining why it would be ineffective given the particular circumstances of the case. *Id.* And the IJ otherwise "failed to consider expressly any alternatives to detention." *Id.* The Government therefore failed to cure the underlying constitutional violation, and Judge Koeltl released the petitioner on certain conditions. *Id.* at *4.

Likewise, in *Fernandez Aguirre v. Barr*, Judge Caproni granted the petitioner's motion to enforce and ordered his release where the IJ at the new bond hearing failed to consider alternatives to detention, thereby violating both due process and the court's prior order. 2019 WL 4511933, at *5. "The bond hearing transcript," Judge Caproni wrote, was "utterly void of any discussion of whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger that Petitioner posed to the safety of the community." *Id.* Judge Caproni further rejected the Government's request for yet another opportunity to cure the error, observing that "[t]he IJ at the second bond hearing . . . showed no inclination to engage in fact-finding or even any real understanding of what this Court's orders required," and that she therefore had "little confidence that allowing the Government a second do-over would reach a different, more constitutionally-permissible result." *Id.* at *7.

Other cases in this Circuit are in accord. *See, e.g.*, *Hechavarria*, 358 F. Supp. 3d at 242–43 (granting motion to enforce and ordering release where the petitioner "was not given the hearing to which he was entitled," as "the IJ did not consider [the petitioner's] proffered alternative [to detention]—or any alternative, for that matter"); *Mathon*, 623 F. Supp. 3d at 217

11

(same where "the IJ disregarded the express terms of the Court's order and improperly relieved the government of the burden of proving by clear and convincing evidence that there were no alternatives to detention that could mitigate any risk of flight or danger to the community"); *Thomas*, 2021 WL 358128, at \*7 (same where the IJ "provided no hint as to what 'alternative methods' she may have considered," and her "decision's vagueness makes it impossible to determine whether she complied with the bond order, which required the adjudicator to find that there was no condition or combination of conditions short of detention that could reasonably assure [the petitioner's] appearance at future immigration court proceedings"); *Quituizaca*, 2021 WL 6797494, at \*6–7 (same where the IJ paid only "lip service to this Court's order," which required the IJ "to meaningfully consider any plausible, less-restrictive alternative to continued detention"); *R.R.M.C. v. Decker*, 2022 WL 4639674, at \*5 (S.D.N.Y. Sept. 30, 2022) ("Nothing in the record reflects that the IJ meaningfully considered any of the alternatives Petitioner offered. . . . The foregoing legal errors resulted in failure to comply with the Order. Petitioner's motion to enforce is granted.").

The record here fits comfortably within this well-established body of caselaw. There is no evidence that the IJ considered, let alone "meaningfully" so, any particular alternatives to detention. *See Mendoza*, 2026 WL 494479, at \*5 ("In considering dangerousness and/or risk of flight and in setting any bond amount, the IJ must *meaningfully consider* alternatives to detention and Petitioner's ability to pay a bond." (emphasis added)). He stated without explanation or elaboration that in making his "bond determination as to dangerousness," he "did not find [that any alternatives to detention] would be appropriate." Dkt. No. 20-1 at 35:12–17. There is no indication in the record that the IJ considered any alternatives. *Ipso facto*, there is also no explanation as to why those alternatives would be insufficient to ensure the safety of the

12

community.  That omission is especially glaring given that Petitioner *did* offer some alternatives to detention, even though it was not his burden to do so.  The IJ did not discuss those alternatives or explain why they were insufficient.  The Government—which carried the burden at the hearing—likewise offered no response to Petitioner's proposed alternatives, nor did it mention any possible alternatives of its own and explain why they were insufficient to ensure the safety of the community based on the particular circumstances of the case.  At best, the IJ "paid lip service to this Court's order."  *Quituizaca*, 2021 WL 6797494, at \*7.  A more accurate conclusion would be that the IJ entirely ignored it.

At the hearing on the motion to enforce on May 20, 2026, Respondents pointed the Court to two points in the bond hearing transcript which they said demonstrated that the IJ adequately considered alternatives to detention.  First, at the very beginning of his oral decision, the IJ stated: "We are here on a habeas petition from the Southern District of New York. . . .  The burden is on the Department of Homeland Security to show the respondent by clear and convincing evidence is either a danger to the community or a flight risk.  In making the determination the Court must consider all the evidence presented as well as to see if there is any alternative to detention that may be available."  Dkt. No. 20-1 at 27:12–20.  The statement indicates that the IJ was aware of the Order.  Awareness of the Order does not demonstrate that the IJ honored it.  Indeed, "the mere utterance of the correct standard of proof early in the IJ's decision is insufficient to demonstrate that it was applied when the rest of that decision demonstrates otherwise."  *Hechavarria*, 358 F. Supp. 3d at 241; *accord Mathon*, 623 F. Supp. 3d at 214; *Quituizaca*, 2021 WL 6797494, at \*6; *R.R.M.C.*, 2022 WL 4639674, at \*4; *see also Reyes v. King*, 2021 WL 3727614, at \*10 n.9 (S.D.N.Y. Aug. 20, 2021) ("The mere fact that the BIA recited the correct standard does not mean it properly applied that standard.").

Second, Respondents pointed to the end of the transcript, where the IJ stated: "Now, the Court notes that the district court did find any alternative form to detention would be appropriate [sic], but, again, the Court making its bond determination as to dangerousness did not find it would be appropriate. It would be fine for a flight risk, not to the dangerousness in this case." Dkt. No. 20-1 at 35:12–17. Respondents argued at the motion-to-enforce hearing that while this analysis was not necessarily lengthy, and while Petitioner might have wanted additional explanation, the IJ's words were good enough. The Court cannot agree. The statement reflects the IJ's bare conclusion that there were no alternatives. It does not demonstrate that the IJ actually considered any. Put differently, the issue is not the length or persuasiveness of the IJ's reasoning; it is the apparent lack of any meaningful consideration at all as to whether there were alternatives to detention that would protect the public. An IJ's "consideration of alternatives to detention . . . guard[s] against the risk of [the petitioner's] continued detention where less restrictive means are available to protect the public." *D.C. v. Noem*, 2026 WL 787895, at *12 (S.D.N.Y. Mar. 20, 2026). "[F]ailing to consider alternatives to detention when assessing dangerousness violates an individual's due process rights." *Beltran Marroquin v. Genalo*, 2025 WL 3241161, at *4 (S.D.N.Y. Nov. 30, 2025) (collecting cases). The Court's Order accordingly required the IJ to "meaningfully" consider alternatives. *See Mendoza*, 2026 WL 494479, at *5.

Courts have emphasized in a number of contexts, including with respect to due process immigration bond hearings, that adjudicators must provide reasons for their decisions, not only to permit review but as a fundamental element of due process. *See Navarijo-Orantes v. Barr*, 2019 WL 5784939, at *7 (W.D.N.Y. Nov. 6, 2019) ("The decision maker must consider—*and must address in any decision*—whether there is clear and convincing evidence that no less-restrictive alternative to physical detention, including release on bond in an amount the petitioner

14

can reasonably afford, with or without conditions, would also reasonably address those purposes." (emphasis added)); *cf. Kim v. Hurston*, 182 F.3d 113, 119 (2d Cir. 1999) ("[T]he procedural due process requirement of a statement of reasons must be observed."); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (due process requires parole board to give "reasons for revoking parole"); *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) ("[T]he decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. . . .  To demonstrate compliance with this elementary requirement, the decision maker should *state the reasons for his determination* and indicate the evidence he relied on . . . ." (emphasis added)); Henry J. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267, 1292 (1975) (emphasizing the importance of providing reasons for decisions as an element of a fair hearing).

Consistent with these principles, the Court's Order at a minimum required the IJ to give some reason why no less restrictive alternative would have protected the community before depriving Petitioner of his liberty.  The IJ was required to meaningfully consider alternatives. The failure of the IJ to offer any "hint as to what 'alternative methods' [he] may have considered," as well as the decision's "vagueness[,] make[] it impossible to determine whether [he] complied with the bond order."  *Thomas*, 2021 WL 358128, at *7; *cf. Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) ("Despite our generally deferential review of IJ and BIA opinions, we require a certain minimum level of analysis from the IJ and BIA opinions[,] . . . and indeed must require such if judicial review is to be meaningful."); *Melnitsenko v. Mukasey*, 517 F.3d 42, 51–52 (2d Cir. 2008) (explaining in a different context that the BIA must "provide sufficient explanation for its decisions in order to provide this Court a meaningful opportunity to review those decisions"); *Wu Lin v. Lynch*, 813 F.3d 122, 129 (2d Cir. 2016)

15

(noting that the Second Circuit generally "require[s] an IJ to give 'specific, cogent reasons' to support rulings" (quoting *Cao He Lin v. U.S. Dep't of Just.*, 428 F.3d 391, 400 (2d Cir. 2005))).

The bond hearing accordingly failed to cure the constitutional violation identified by the Court in its February 23, 2026 order.

### III.    The Appropriate Remedy Is Release.

"Federal courts are authorized to 'dispose of [a habeas petition] as law and justice requires,' 28 U.S.C. § 2243, and are afforded 'broad discretion . . . in fashioning the judgment granting relief to a habeas petitioner.'" *G.F.F.*, 2026 WL 924072, at *4 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).  "The Government's failure to cure a constitutional error identified in a conditional writ of habeas corpus justifies the district court's release of the petitioner." *Fernandez Aguirre*, 2019 WL 4511933, at *7 (cleaned up and citation omitted) (collecting cases).

At the hearing on the motion to enforce, Respondents suggested that if the Court determined that the Order had not been complied with, the proper course would be for the Court to remand to an IJ for yet another re-do.  The Court is aware that at least one court in this Circuit has granted that relief. *See, e.g.*, *R.R.M.C.*, 2022 WL 4639674, at *5.  It appears that far more, however, have ordered release. *See, e.g.*, *G.F.F.*, 2026 WL 924072, at *4; *Fernandez Aguirre*, 2019 WL 4511933, at *7–8; *Hechavarria*, 358 F. Supp. 3d at 243–44; *Mathon*, 623 F. Supp. 3d at 218–19; *Thomas*, 2021 WL 358128, at *8–9; *Quituizaca*, 2021 WL 6797494, at *7–8.  And given the particular circumstances of this case, the Court believes that release is appropriate.

The Court's prior order was clear—not only with respect to what was required for Respondents to cure the constitutional violation (among other things, meaningful consideration of alternatives to detention), but also with respect to what might happen if Respondents failed to comply.  The decretal language of the Court's Order was that the Petition was conditionally

16

granted and that Petitioner was "ordered released unless by March 6, 2026 the Government holds a bond hearing" at which the IJ would "meaningfully consider alternatives to detention." *See Mendoza*, 2026 WL 494479, at *5. Respondents had it within their power to ensure that this case would not return to this Court. Respondents could have insisted that the IJ actually consider alternatives to detention and that he either grant Petitioner's release on conditions or, if not, provide some reason for not doing so. Respondents instead made no mention of alternatives to detention at the hearing.

Respondents offer no reason why the Court should not adhere to its prior order or why they should be permitted a *third chance* to cure what has now been approximately one year of unconstitutional detention. *See Mendoza*, 2026 WL 494479, at *3 (explaining that due process requires a prompt post-arrest bond hearing where the Government bears the burden of demonstrating dangerousness or risk of flight by clear and convincing evidence after considering alternatives to detention); *Fernandez Aguirre*, 2019 WL 4511933, at *7 ("[A]t the time the motion was filed, the Government had detained Petitioner for more than seven months without having offered any constitutional basis for doing so. . . . That is simply not acceptable in this country . . . ."). Respondents' cause is not helped by the fact that they failed to comply with two other orders issued by this Court prior to the bond hearing. The Court has "little confidence" that repeating the same instructions and warnings it has already given will lead to "a different, more constitutionally-permissible result." *Fernandez Aguirre*, 2019 WL 4511933, at *7.[3]

---

[3] In his memorandum of law, Petitioner cites recent cases in which judges around the country have noted apparent pressures some IJs have faced to deny bond. *See, e.g.*, *Vera-Velez v. Soto*, 2026 WL 963348, at *3 (D.N.J. Apr. 9, 2026) ("The evidence submitted by Petitioner suggests that immigration judges are being appointed or pressured to find in favor of detention . . . ."); *Garcia Ortiz v. Henkey*, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026) ("Petitioner has also submitted evidence that Immigration Judges across the country are systemically denying bond to alien detainees, regardless of the weight of the evidence."); *Chavez Ochoa v. Mason*, 2026 WL

"When 'deciding whether release from custody is the appropriate remedy for the government's failure to comply with a conditional writ of habeas corpus, a district court should consider the risks posed by releasing' the petitioner." *G.F.F.*, 2026 WL 924072, at *4 (quoting *Mathon*, 623 F. Supp. 3d at 219). This includes a consideration of possible conditions of release which might mitigate any such risks. *Id.* At the motion-to-enforce hearing, the Court asked counsel for Respondents what, if any, conditions might be appropriate if the Court concluded that release was warranted. Counsel for Respondents offered none. At the same time, however, Petitioner offered no persuasive reason why the Court should not keep in place the condition that the IJ determined would be sufficient to assure Petitioner's future appearance. The Court therefore determines that release on $3,000 bond—the amount that the IJ set in the event that his determination with respect to dangerousness was set aside—is both sufficient and appropriate.

## CONCLUSION

The motion to enforce is GRANTED.

SO ORDERED.

Dated: May 26, 2026
       New York, New York

_____
            LEWIS J. LIMAN
         United States District Judge

---

541144, at *2 n.4 (S.D. W. Va. Feb. 26, 2026) (noting some evidence suggesting that "immigration judges who provide neutral adjudications have been removed, and bond is systematically denied after a pro forma hearing with a predetermined outcome"); *Quiroz Zacarias v. Mullin*, 2026 WL 1092162, at *5 (D. Colo. Apr. 22, 2026) ("[T]he mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." (citation omitted)). This Court need not rely on the experiences of other courts to predict what might happen if these proceedings were remanded to an IJ for another bond hearing. The record in this case is evidence enough.